UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
─────────────────────────────────────────────

JACOB J BAHLING,

        Plaintiff,

        v.                                        Case No. 21-cv-0304-bhl

RICHARD E FULLER,
ERIC R NELSON,
DILIP TANNAN,
BENJAMIN HUANG,
ROBERT RHODES, and
JANE DOES 1 and 2,

        Defendants.
─────────────────────────────────────────────

## SCREENING ORDER
─────────────────────────────────────────────

Plaintiff Jacob Bahling, who is currently serving a state prison sentence at the Dodge Correctional Institution and representing himself, filed a complaint under 42 U.S.C. §1983, alleging that his civil rights were violated. On April 29, 2021, he filed an amended complaint, which he is permitted to do once without the Court's permission. Dkt. No. 12; Fed. R. Civ. P. 15(a)(1). A little more than a week later, he filed a supplement to his amended complaint, in which he identifies some of the Defendants who he originally sued as John Does. Dkt. No. 13. The Court has updated the docket accordingly. This matter comes before the Court on Bahling's motion for leave to proceed without prepaying the full filing fee and to screen the amended complaint.

### MOTION TO PROCEED WITHOUT PREPAYING THE FILING FEE

Bahling has requested leave to proceed without prepaying the full filing fee (*in forma pauperis*). A prisoner plaintiff proceeding *in forma pauperis* is required to pay the full amount of the $350.00 filing fee over time. *See* 28 U.S.C. §1915(b)(1). Bahling has filed a certified copy of his prison trust account statement for the six-month period immediately preceding the filing of his complaint, as required under 28 U.S.C. §1915(a)(2), and has been assessed and paid an initial partial filing fee of $5.64. Bahling's motion for leave to proceed without prepaying the filing fee will be granted.

## SCREENING OF THE COMPLAINT

The Court has a duty to review any complaint in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity, and dismiss any complaint or portion thereof if the prisoner has raised any claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b). In screening a complaint, the Court must determine whether the complaint complies with the Federal Rules of Civil Procedure and states at least plausible claims for which relief may be granted. To state a cognizable claim under the federal notice pleading system, a plaintiff is required to provide a "short and plain statement of the claim showing that [he] is entitled to relief." Fed. R. Civ. P. 8(a)(2). It must be at least sufficient to provide notice to each defendant of what he or she is accused of doing, as well as when and where the alleged actions or inactions occurred, and the nature and extent of any damage or injury the actions or inactions caused.

"The pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 556. "[T]he complaint's allegations must be enough to raise a right to relief above the speculative level." *Id.* at 555 (internal quotations omitted).

## ALLEGATIONS OF THE COMPLAINT

Bahling asserts that Dr. Brian Zafonte (not a defendant) installed an internal hinge on his right elbow on July 3, 2018. Dr. Zafonte allegedly ordered that the hinge should be removed and that physical therapy should begin three months after the surgery to prevent the hinge from poking through Bahling's skin and so that Bahling could regain full range of motion. Dkt. No. 12 at 4.

Bahling was arrested a couple of weeks after the surgery, on July 19, 2018, and was initially incarcerated at the Racine County Jail. He was transferred to Dodge Correctional Institution in

September 2018. Bahling asserts that he notified the Dodge medical staff of his injury and of Dr. Zafonte's order that the hinge should be removed in October. Bahling asserts that he was scheduled to see Defendant Dr. Richard Fuller for an examination. Dr. Fuller referred Bahling to Dr. Eric Nelson, an orthopedic surgeon at Waupun Memorial Hospital. Dkt. No. 12 at 5.

According to Bahling, Dr. Nelson opined that the hinge should remain in place for one year rather than three months. Bahling asserts that Dr. Nelson did not consult with Dr. Zafonte in reaching this conclusion. Dr. Nelson also allegedly opined that it would not benefit Bahling to do physical therapy until after the hinge was removed, given the severity and extent of his injury. Bahling explains that he informed Dr. Nelson that he was already doing physical therapy and seeing positive results. Bahling explains that Dr. Nelson rudely disregarded him. Dr. Fuller allegedly agreed with Dr. Nelson's opinion regarding when the hinge should be removed. Dkt. No. 12 at 5-6.

Bahling asserts that he began writing grievances asking for the hinge to be removed and for a permanent bottom bunk restriction, but he received only 30- to 60-day restrictions. He asserts that "at times" he had to climb to the top bunk, which caused him pain. He also feared that doing so could complicate his injury. According to Bahling, Dr. Fuller ordered measurements by a physical therapist, but she immediately discharged him from physical therapy noting that he needed to have the hinge removed first. Dkt. No. 12 at 6.

After about two months at Dodge, in November 2018, Bahling transferred to Oshkosh Correctional Institution, where Defendant Dr. Dilip Tannan (originally sued as John Doe #1) was his primary care physician. Bahling was referred to physical therapy, but the physical therapist recommended that the hinge be removed first, so Dr. Tannan referred Bahling back to Dr. Nelson at Waupun Memorial Hospital. Dr. Nelson maintained his original opinion that the hinge should remain in place for a year. Bahling asserts that his temporary bottom bunk restrictions kept expiring, so he would have to climb to the top bunk, putting him at risk for injury. Bahling asserts that he began to write more and more inmate complaints to have the hinge removed and to start physical therapy. Bahling asserts that he began to see his skin thinning and stretching more and more, so he wrote to the warden (sued as Jane Doe #1) but she allegedly responded that medical staff were handling his complaints and she did not believe there was need to intervene. While Bahling was serving a 90-day discipline in segregation, he was referred to Green Bay Correctional (a maximum-security facility). Dkt. No. 12 at 6-7.

3

In June 2019, the hinge allegedly poked through Bahling's skin. Dr. Nelson allegedly ordered the hinge to be removed on June 26, 2019. Bahling explains he was transferred to Green Bay in August 2019, where Jane Doe #2 was his primary physician. Bahling asserts that he told her about his injury and need for physical therapy, but she allegedly noted that the order was expired and decided no therapy was required. Dkt. No. 12 at 7-8.

Bahling asserts that he was transferred to the Wisconsin Resource Center in October 2017, where Defendant Dr. Benjamin Huang (initially sued as John Doe #2) was his primary care physician. Dr. Huang initially denied Bahling's request for physical therapy, but after Bahling filed grievances, referred Bahling to Robert Rhodes (originally sued as John Doe #3), a physical therapist. Bahling asserts that Rhodes did some measurements, two stretching sessions, and then discharged Bahling, telling him that he could do the physical therapy on his own. Bahling asserts he became depressed and psychotic. He allegedly took Tylenol every day. Dkt. No. 12 at 8.

Bahling was released from prison in May 2020. He was arrested again at some point. He states that he has been seeing medical staff for pain and has been doing his own physical therapy exercises, but he asserts that he suffers from permanent damage to his elbow. He is seeking damages for pain and suffering and would like surgery to repair his elbow. Dkt. No. 12 at 8-9.

## ANALYSIS

"[T]he Eighth Amendment, as the Supreme Court has interpreted it, protects prisoners from prison conditions that cause the wanton and unnecessary infliction of pain, including . . . grossly inadequate medical care." *Gabb v. Wexford Health Sources, Inc.*, 945 F.3d 1027, 1033 (7th Cir. 2019) (quoting *Pyles v. Fahim*, 771 F.3d 403, 408 (7th Cir. 2014)) (internal quotations omitted). The Court uses a two-part test to evaluate whether medical care amounts to cruel and unusual punishment. It asks, first, "whether a plaintiff suffered from an objectively serious medical condition," and, second, "whether the individual defendant was deliberately indifferent to that condition." *Id*. (quoting *Petties v. Carter*, 836 F.3d 722, 727-28 (7th Cir. 2016) (en banc)). Bahling's elbow condition satisfies the objective prong of the standard, so the Court's analysis will focus on whether Bahling sufficiently alleges that each Defendant was deliberately indifferent to that condition.

The Seventh Circuit has repeatedly held that a "[d]isagreement between a prisoner and his doctor, or even between two medical professionals, about the proper course of treatment generally is insufficient, by itself, to establish an Eighth Amendment violation." *Lockett v. Bonson*, 937

F.3d 1016, 1023 (7th Cir. 2019). That standard reflects that there is no single "proper way to practice medicine in a prison, but rather a range of acceptable courses based on prevailing standards in the field." *Id.* (quoting *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008)).

Bahling asserts that Dr. Zafonte, the doctor who performed his elbow surgery, opined at the time of the surgery that the hinge should be removed in about three months. Dr. Nelson, the orthopedic surgeon who examined Bahling near the end of that three-month period, opined that the hinge should remain in place for a year—nine months longer than Dr. Zafonte opined the hinge should remain in place. According to Bahling, Dr. Zafonte believed the hinge should be removed after three months to avoid the hinge poking through the skin and so that Bahling could regain full range of motion.

While a difference in opinion between medical providers is typically an insufficient basis to state a claim, given that Bahling alleges he suffered the very harms that Dr. Zafonte hoped to avoid by removing the hinge after three months, the Court believes further development of the record is necessary to determine whether Dr. Nelson's decision to wait a full year to remove the hinge was "so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate [Bahling's] condition." *Greeno v. Daley*, 414 F.3d 645, 654 (7th Cir 2005) (citations omitted).

While the Court concludes that Bahling states a deliberate indifference claim against Dr. Nelson, the Court does not reach the same conclusion as to the remaining Defendants. Bahling was at Dodge for about two months. During that time, Dr. Fuller examined him, referred him to an offsite orthopedic surgeon for consultation, and referred him to physical therapy. Similarly, while Bahling was at Oshkosh, Dr. Tannan examined him, referred him for a second time to the orthopedic surgeon so he could reassess Bahling's condition, and referred him to physical therapy. Dr. Fuller and Dr. Tannan are not orthopedic specialists, and therefore they lacked the expertise to determine whether Bahling's elbow was properly healing and when the hinge should be removed. As such, they both sought help from a specialist who could better assess Bahling's condition. Their decision to seek guidance from an offsite specialist undermines a finding that they were deliberately indifferent to Bahling's condition as does their efforts to help Bahling regain full range of motion by referring him to physical therapy.

Bahling also fails to state a claim against Jane Doe #2, his primary care physician at Green Bay. According to Bahling, he was transferred there in August 2019, a month or two after his

5

surgery to remove the hinge. He was at Green Bay for a limited time—about two months. According to Bahling, Jane Doe #2 examined him but determined physical therapy was unnecessary after noting that a prior order for physical therapy had expired. These limited allegations do not support a conclusion that Jane Doe #2 was deliberately indifferent to Bahling's condition. Bahling disagreed with her assessment that physical therapy was unnecessary, but as previously explained, a disagreement between a prisoner and his doctor is an insufficient basis to establish liability under the Eighth Amendment. Bahling also fails to state a claim against Dr. Huang, his primary care physician at the Wisconsin Resource Center. Consistent with Jane Doe #2, Dr. Huang initially determined physical therapy was unnecessary, but later made the referral in response to Bahling's persistent complaints. His willingness to change his assessment and offer Bahling the very treatment he requested does not demonstrate deliberate indifference.

Bahling fails to state a claim against Rhodes (the physical therapist at the Wisconsin Resource Center), who decided that, after evaluating Bahling and offering two stretching sessions, Bahling could do the required stretches on his own. Bahling's disagreement with Rhodes' judgment that Bahling could do the necessary stretches without assistance fails to state a claim.

Bahling also fails to state a claim against Jane Doe #1, the warden at Green Bay, who responded to Bahling's concerns by telling him that medical staff was handling his complaints and that she did not believe there was reason to interfere. The Seventh Circuit has long held that non-medical officials may rely on the expertise of medical personnel. *See Arnett v. Webster*, 658 F.3d 742, 755-56 (7th Cir. 2011). After Bahling raised his concerns to her, she verified that medical personnel were responding to his complaints. Given her lack of medical knowledge and experience, that is all the Constitution required of her.

Finally, Bahling fails to state a claim based on his allegations that his temporary low-bunk assignments sometimes expired. Bahling asserts that he was afraid that having to climb to the top bunk could further injure his elbow. Putting aside the fact that is unclear from the allegations who was responsible for allowing the low-bunk restrictions to expire, the Seventh Circuit has explained that a plaintiff cannot obtain damages based only on a "risk of what *could have* happened." *Walker v. Correctional Officer Leibert*, 844 F. App'x 920, 922 (7th Cir. 2021) (emphasis in original) (citing *Lord v. Beahm*, 952 F.3d 902, 905 (7th Cir. 2020)). Because Bahling appears to have suffered no actual injury as a result of having to occasionally sleep on the top bunk, the risk he faced is not actionable. *See id.*

6

In summary, the Court finds that Bahling may proceed on a deliberate indifference claim against Dr. Nelson. He fails to state a claim against the remaining Defendants.

**IT IS THEREFORE ORDERED** that Bahling's motion for leave to proceed *in forma pauperis* (Dkt. No. 5) is **GRANTED**.

**IT IS FURTHER ORDERED** that Richard Fuller, Dilip Tannan, Jane Does 1 and 2, Benjamin Huang, and Robert Rhodes are **DISMISSED** based on Bahling's failure to state a claim against them.

**IT IS FURTHER ORDERED** that the United States Marshal shall serve a copy of the amended complaint and this order upon Dr. Eric Nelson pursuant to Federal Rule of Civil Procedure 4. Bahling is advised that Congress requires the U.S. Marshals Service to charge for making or attempting such service. 28 U.S.C. §1921(a). The current fee for waiver-of-service packages is $8.00 per item mailed. The full fee schedule is provided at 28 C.F.R. §§0.114(a)(2)–(3). Although Congress requires the Court to order service by the U.S. Marshals Service precisely because *in forma pauperis* plaintiffs are indigent, it has not made any provision for these fees to be waived either by the Court or by the U.S. Marshals Service. The Court is not involved in the collection of the fee.

**IT IS FURTHER ORDERED** that Dr. Nelson shall file a responsive pleading to the amended complaint.

**IT IS FURTHER ORDERED** that the agency having custody of Bahling shall collect from his institution trust account the $344.36 balance of the filing fee by collecting monthly payments from Bahling's prison trust account in an amount equal to 20% of the preceding month's income credited to the prisoner's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The payments shall be clearly identified by the case name and number assigned to this action. If Bahling is transferred to another institution, the transferring institution shall forward a copy of this Order along with Bahling's remaining balance to the receiving institution.

**IT IS FURTHER ORDERED** that the parties may not begin discovery until after the Court enters a scheduling order setting deadlines for discovery and dispositive motions.

**IT IS FURTHER ORDERED** that plaintiffs who are inmates at Prisoner E-Filing Program institutions must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the Court. The Prisoner E-Filing Program is mandatory for all

inmates of Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution. Plaintiffs who are inmates at all other prison facilities must submit the original document for each filing to the Court to the following address:

>Office of the Clerk
>United States District Court
>Eastern District of Wisconsin
>362 United States Courthouse
>517 E. Wisconsin Avenue
>Milwaukee, Wisconsin 53202

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS. It will only delay the processing of the matter.

Bahling is further advised that failure to make a timely submission may result in the dismissal of this action for failure to prosecute. In addition, the parties must notify the Clerk of Court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Enclosed is a guide prepared by court staff to address common questions that arise in cases filed by prisoners. Entitled "Answers to Prisoner Litigants' Common Questions," this guide contains information that Plaintiff may find useful in prosecuting this case.

Dated at Milwaukee, Wisconsin this 19th day of May, 2021.

>s/ *Brett H. Ludwig*
>BRETT H. LUDWIG
>United States District Judge