UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JACOB J. BAHLING,

        Plaintiff,

        v.                        Case No. 21-cv-0304-bhl

ERIC NELSON,

        Defendant.

## DECISION AND ORDER DENYING DEFENDANT'S
## MOTION FOR SUMMARY JUDGMENT

Plaintiff Jacob Bahling, an inmate at the Wisconsin Resource Center, is represented by counsel[1] in this 42 U.S.C. §1983 action. He is proceeding on an Eighth Amendment claim based on allegations that Defendant Dr. Eric Nelson failed to timely remove a temporary elbow hinge, causing Bahling to experience unnecessary pain for about six months. On January 13, 2023, Defendant filed a summary judgment motion, which was fully briefed on March 23, 2023. A little more than a month later, on May 4, 2023, Bahling, without the assistance of counsel, filed a motion to voluntarily dismiss this action. Counsel, which the Court had recruited to represent Bahling, conferred with Bahling and confirmed, contrary to his May 4 filing, that he did in fact wish to proceed with this action. Counsel explained in a letter that Bahling stated that his motion was motivated by concerns unrelated to the merits of the case and that his mental health condition impacted his decision to file the motion. Dkt. No. 75. The Court will grant Bahling's counsel's

---

[1] The Court thanks Attorneys Daniel Narvey and Xavier Jenkins for agreeing to represent Mr. Bahling *pro bono*. Both performed a valuable service to the plaintiff, the Court, and the justice system.

request to withdraw Bahling's motion to voluntarily dismiss this action. And, for the reasons explained below, the Court will deny Defendant's summary judgment motion.

## BACKGROUND

On July 2, 2018, Bahling jumped out of a two-story window and dislocated and fractured his right elbow. In the following days, orthopedic surgeon Dr. Brian Zafonte (who is not a Defendant) performed two procedures to repair and stabilize Bahling's elbow, including placing a "multiplanar external fixator device" in the elbow. Bahling was discharged from the hospital on July 11, 2018, and about a week later, on July 19, 2018, he was arrested on a probation violation and held at the Racine County Jail. Dkt. No. 67 at ¶¶8-9, 12-17; Dkt. No. 70 at ¶2.

According to Bahling, in the weeks following his discharge from the hospital, the skin around the elbow implant began to stretch, crack, and bleed, causing him significant pain and discomfort. Bahling saw Dr. Zafonte for postoperative follow-up care throughout July, August, and September 2018. On September 12, 2018, Dr. Zafonte examined Bahling and noted that his range of motion was much improved and that he was "ready to have the hardware removed from the elbow." Dr. Zafonte noted that they would "get him scheduled in the next week or 2 to do that." Dkt. No. 70 at ¶¶1-3; Dkt. No. 65-2 at 8.

Before the removal procedure could be scheduled, indeed, the very next day, September 13, 2018, Bahling's probation was revoked, and he was transferred from the Racine County Jail to the Racine Correctional Institution on September 24, 2018. He was later transferred to the Dodge Correctional Institution and then, on January 16, 2019, to the Oshkosh Correctional Institution. Dkt. No. 67 at ¶¶20-23.

According to Bahling, when he arrived at Dodge, he was still experiencing pain in his elbow around the hardware. On October 25 and 26, 2018, he was seen by a prison nurse and doctor after complaining that his elbow hurt a lot and noting that he was supposed to have surgery in

September to remove the hinge. The doctor referred Bahling to see Defendant Dr. Eric Nelson, an orthopedic surgeon at the Fond du Lac regional clinic. Bahling asserts that, on November 11, 2018, before he was seen by Dr. Nelson, he hit his right elbow while sleeping, causing the hardware to perforate his skin. Dkt. No. 67 at ¶¶5-7, 25; Dkt. No. 70 at ¶7-13.

Dr. Nelson first saw Bahling more than a month later, on December 28, 2018, at the Fond du Lac regional clinic. Bahling asserts that he told Dr. Nelson that the elbow hinge was causing him pain and that Dr. Zafonte had recommended that the hardware be removed. Dr. Nelson disputes that Bahling told him he was in pain. He also notes that his office note reflects only that Bahling's previous doctor had "suggested" that the hardware be removed. Dr. Nelson took Bahling's medical history, physically examined Bahling's elbow, and ordered and reviewed x-rays of Bahling's elbow. He confirmed the presence of "visibly prominent exotic hardware" in Bahling's elbow and noted that the incision over the surgical site was completely healed. In his visit notes, Dr. Nelson stated that "[i]t is generally not recommended to electively remove fracture hardware sooner than one year from the index operation because doing so in a timeframe sooner than that significantly elevates the risk of re-fracture." He also stated, "[h]is hardware is admittedly prominent, but I do not think that issue is significant enough to justify the risk of re-fracture with elective hardware removal at this time." He recommended that "we not consider or pursue elective hardware removal [until] July 2019 pending something dramatic compelling the issue such as catastrophic failure or infection." Dr. Nelson communicated his diagnosis and treatment plan to Bahling's prison health care providers. Dkt. No. 67 at ¶¶25-35, 48.

Dr. Nelson was unable to identify the device in Bahling's elbow, and he did not recognize the implant company. He later acknowledged that he was unfamiliar with temporary orthopedic implants like the one installed in Bahling's elbow and had never seen such a device, nor had he

ever treated a patient with such a device. Dr. Nelson did not contact Dr. Zafonte, nor did he try to get Bahling's previous medical records. Dr. Nelson did not identify the specific device in Bahling's arm until nearly six months later when he removed it. The device Dr. Zafonte had implanted is known as an "internal joint stabilizer." The maker of the device recommends that it remain in place for at least 8 to 12 weeks following surgery to allow the soft tissues to heal. By the time Dr. Nelson examined Bahling, the device had been in Bahling's elbow for about 6 months. Dkt. No. 67 at ¶¶40-42; Dkt. No. 70 at ¶¶14-22.

According to Bahling, he continued to experience pain and discomfort with the hardware following his visit with Dr. Nelson. Although Bahling asserts that he told his health care providers he was in pain over the next several months, Dr. Nelson claims he was never informed of such complaints. Bahling also asserts that he purchased Neosporin and bandages to keep his elbow moisturized and covered and that at night he wrapped his arm in a shirt to avoid bumping his elbow on the wall. But, again, Dr. Nelson insists he was not informed of Bahling's concerns. Dkt. No. 70 at ¶¶23-31.

About six months after first seeing Dr. Nelson, on June 22, 2019, Bahling hit his elbow on the wall while he was sleeping, causing the area around the implant to puncture the skin. Two days later, Bahling saw a prison health provider who again referred him to Dr. Nelson. On June 25, 2019, Dr. Nelson examined Bahling's elbow, noted a small area where the skin had broken down, and observed there was no exposed metal or cellulitis. Given the risk of infection and that, in Dr. Nelson's view, the risk of re-fracture was now significantly lower, he recommended that the device be removed. A few days later, Bahling was diagnosed with a staph infection, which was successfully treated with antibiotics. Dkt. No. 67 at ¶¶54-60; Dkt. No. 70 at ¶32-34.

4

Dr. Nelson removed the implant on June 28, 2019. Prior to the surgery, Dr. Nelson identified the manufacturer of the device and obtained the specialized tools necessary to remove the device. Two months after the surgery, Dr. Nelson examined Bahling's elbow and noted that the wound was completely healed. Dr. Nelson believed that, considering the severity of the initial injury, Bahling's outcome was the best-case scenario for him. Dkt. No. 67 at ¶¶61-70.

## LEGAL STANDARD

Summary judgment is appropriate when the moving party shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. All reasonable inferences are construed in favor of the nonmoving party. *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004). The party opposing the motion for summary judgment must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co*., 612 F.3d 932, 937 (7th Cir. 2010) (citations omitted). "The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Id*. Summary judgment is properly entered against a party "who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Parent v. Home Depot U.S.A., Inc.*, 694 F.3d 919, 922 (7th Cir. 2012) (internal quotations omitted).

## ANALYSIS

**1. Dr. Nelson was acting under the color of state law when he treated Bahling.**

Before reaching the merits of Bahling's claim, the Court will first address Dr. Nelson's argument that he cannot be liable under 42 U.S.C. §1983 because he was not a State employee and was not acting under the color of state law when he treated Bahling. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 822 (7th Cir. 2009) (noting that a plaintiff must show that a private entity acted under the color of state law to state a §1983 claim).

The Seventh Circuit has explained that "the state action doctrine requires that a court find such a 'close nexus between the State and the challenged action' that the challenged action 'may be fairly treated as that of the State itself.'" *Id.* at 823 (citations omitted). In the context of nongovernmental health care providers treating state prisoners, courts are directed to focus on the particular function of the provider in fulfilling the state's constitutional obligation to provide health care to prisoners. *Id.* at 825. This functional analysis focuses on what is referred to as the trilateral relationship between the state, the health care provider, and the prisoner, and assesses, in part, whether the provider voluntarily accepted the responsibility for acting for the state and whether the provider has a direct, rather than attenuated, relationship with the prisoner. *Id.* at 826-28. At bottom, the state cannot avoid its constitutional obligations and deprive individuals of their constitutionally protected rights by delegating health care to the private sector. *Id.* at 826. Thus, "the delegation of the function should be accompanied with the delegation of constitutional responsibilities." *Id.*

With this framework in mind, the Court concludes that Dr. Nelson was acting under the color of state law when he treated Bahling. State-employed providers determined that they were unable to provide adequate care for Bahling's elbow. Bahling requested that he be sent to Dr.

Zafonte to have the device removed, but the state provider refused and instead referred Bahling to Dr. Nelson, who accepted the referral and agreed to evaluate Bahling. Bahling was then transported by and under the control of prison staff to the clinic where Dr. Nelson worked. "The state clearly does not relieve itself of its responsibility to provide medical care solely on account of the venue where those services are rendered." *Rodriguez*, 577 F.3d at 827. Dr. Nelson evaluated Bahling while he was "sitting there shackled with guards," Dkt. No. 65-6 at 12, ordered diagnostic testing, and recommended a treatment plan. He also disregarded Bahling's assertions that the surgeon who placed the device had intended to remove the implant months earlier. Dr. Nelson invited Bahling to return to him sooner than recommended if problems arose, and he later removed the device from Bahling's arm because state providers lacked the training to do so. Given these facts, which shed light on the trilateral relationship of the state, Bahling, and Dr. Nelson, the Court concludes that Dr. Nelson was acting in the stead of the state when he provided medical care to Bahling. Dr. Nelson is therefore not entitled to summary judgment on the basis that he was not a state actor.

2. **A jury could reasonably conclude that Dr. Nelson showed deliberate indifference to Bahling's serious medical condition.**

With regard to the merits of Bahling's claim, Bahling asserts that Dr. Nelson's decision to delay removing the device caused him unnecessary pain for six months and caused the breakdown of his skin, which led to a staph infection. In response, Dr. Nelson insists that he exercised his reasonable medical judgment when he decided to delay removing the device. He notes that Bahling had suffered a significant injury and that re-fracturing the elbow could have resulted in permanent injury and loss of function. Dr. Nelson further states that, because Bahling was not reporting skin issues or pain at the time of the first examination, he reasonably believed it was in Bahling's best interest to leave the device in for another six months, consistent with general

7

recommendations in the medical literature available at that time (although not with respect to this particular product).

To prevail on a deliberate indifference claim under the Eighth Amendment, a plaintiff must prove that prison officials intentionally disregarded a known, objectively serious medical condition that posed an excessive risk to the plaintiff's health. *Perez v. Fenoglio*, 792 F.3d 768, 777 (7th Cir. 2015) (citations omitted). The Seventh Circuit has clarified that, "[w]ithin the universe of deliberate indifference cases is a narrower category when a prisoner alleges not that his condition was ignored entirely, but that he received constitutionally deficient treatment for that condition." *Lockett v. Bonson*, 937 F.3d 1016, 1023 (7th Cir. 2019). These types of cases are "better framed not as deliberate indifference to a serious medical need, but as a challenge to a deliberate decision by a doctor to treat a medical need in a particular manner." *Id.* (internal punctuation and citations omitted). It has long been held that, in such cases, courts must "defer to a medical professional's treatment decision 'unless no minimally competent professional would have so responded under those circumstances." *Id.* Further, it is important to note that a "disagreement between a prisoner and his doctor, or even between two medical professionals, about the proper course of treatment is generally insufficient, by itself, to establish an Eighth Amendment violation." *Id.* (citations omitted).

Based on the record before the Court, a jury could reasonably conclude that Dr. Nelson failed to employ his professional judgment when he decided to delay removing the elbow device for an additional six months. Dr. Nelson explains that he listened to Bahling's description of his injury and pain, examined his elbow, and ordered diagnostic testing. He noted that the hardware was pushing out against Bahling's skin, but he saw no evidence of skin breakdown. His understanding of the standard of care at that time was that hardware after an elbow fracture should

8

remain in place for a year to avoid re-fracturing the elbow. Although Bahling expressed a desire for the device's removal and although discomfort at the elbow and degradation of the skin was possible, Dr. Nelson thought it more important to avoid risking a re-fracture, which could result in a permanent injury and significant pain. As such, Dr. Nelson recommended that the device, which had already been in place for six months, remain in place for another six months or until a change in circumstances demanded it be removed.

The problem with Dr. Nelson's assertion that he exercised professional judgment is that he failed to gather key facts needed to make an informed decision. Dr. Nelson concedes that, although he was unfamiliar with the "exotic" device in Bahling's arm and despite Bahling telling him that his prior surgeon intended to remove the device months earlier, Dr. Nelson made no effort to learn about the device, contact the surgeon who placed it, or obtain Bahling's medical records. Importantly, Dr. Nelson does not state in his declaration that, had he known about the manufacturer's recommendation that the device stay in place for eight to twelve weeks (as opposed to a full year), he would have made the same recommendation to leave the device in place.[2] Thus, this is not a case of two specialists reaching different conclusions based on a full review of the relevant information. Dr. Nelson concedes that he did *not* gather the relevant information even when it was obvious to him that he was unfamiliar with the device in Bahling's arm. *See Rowe v. Gibson*, 798 F.3d 622, 627 (7th Cir. 2015). This also is not a case of a mere mistake in professional judgment. While it is agreed that Dr. Nelson exercised his professional judgment based on the facts available to him, it is also agreed that he made no effort to gather additional facts that he

---

[2] Dr. Nelson's counsel argues that Dr. Nelson's "treatment recommendation would not have changed based upon the specific type of hardware in question or the manufacturer thereof." Dkt. No. 69 at 10. But counsel does not cite to evidence to support this argument.

9

knew he was missing and that could impact his decision. *See Conley v. Birch*, 796 F.3d 742, 747-48 (7th Cir. 2015).

Given that Bahling asserts that he suffered in pain for an additional six months and given the open question whether Dr. Nelson would have made a different recommendation had he gathered all the relevant information, a jury could reasonably conclude that Dr. Nelson exhibited deliberate indifference when he delayed removing the device by six months. As such, Dr. Nelson is not entitled to summary judgment.

## CONCLUSION

**IT IS THEREFORE ORDERED** that, pursuant to Bahling's counsel's letter request (Dkt. No. 75), Bahling's motion to dismiss (Dkt. No. 71) is **WITHDRAWN**.

**IT IS FURTHER ORDERED** that Dr. Nelson's motion for summary judgment (Dkt. No. 52) is **DENIED**.

The Court will set a scheduling conference to discuss next steps. If agreeable to the parties, they may file a joint request for mediation, and the Court will refer this action to a magistrate judge for that purpose.

Dated at Milwaukee, Wisconsin on August 1, 2023.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge